MCDERMOTT WILL & EMERY LLP
Paul W. Hughes (*Pro Hac Vice pending*)
phughes@mwe.com
Sarah P. Hogarth (*Pro Hac Vice to be filed*)
500 North Capitol Street NW
Washington, DC 20001
(202) 756-8000

William G. Gaede, III (136184)
wgaede@mwe.com
415 Mission Street, Suite 5600
San Francisco, CA 94105
(650) 815-7400

Attorneys for Plaintiffs

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA; NATIONAL ASSOCIATION OF MANUFACTURERS; BAY AREA COUNCIL; NATIONAL RETAIL FEDERATION; AMERICAN ASSOCIATION OF INTERNATIONAL HEALTHCARE RECRUITMENT; PRESIDENTS' ALLIANCE ON HIGHER EDUCATION AND IMMIGRATION; CALIFORNIA INSTITUTE OF TECHNOLOGY; CORNELL UNIVERSITY; THE BOARD OF TRUSTEES OF THE LELAND STANFORD JUNIOR UNIVERSITY; UNIVERSITY OF SOUTHERN CALIFORNIA; UNIVERSITY OF ROCHESTER; UNIVERSITY OF UTAH; and ARUP LABORATORIES, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF HOMELAND SECURITY; UNITED STATES DEPARTMENT OF LABOR; CHAD F. WOLF, in his official capacity as Acting Secretary of Homeland Security; and EUGENE SCALIA, in his official capacity as Secretary of Labor, <br><br> Defendants. | Case No. 20-CV-7331-JSW <br><br> **DECLARATION OF EDMUND O. SCHWEITZER, III IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION TO STAY AGENCY ACTION OR FOR PARTIAL SUMMARY JUDGMENT** |

McDermott Will & Emery LLP
Attorneys At Law
Menlo Park

I, Edmund O. Schweitzer, III, declare as follows:

1.      I am the President and Chief Technology Officer of Schweitzer Engineering Laboratories, Inc. ("SEL"), and have served as President since the company's founding in 1982. SEL is a member of Plaintiffs the U.S. Chamber of Commerce and the National Association of Manufacturers.

2.      SEL invents, designs, and builds digital products and systems that protect power grids around the world. This technology prevents blackouts and enables customers to improve power system reliability and safety at a reduced cost. A 100 percent employee-owned company headquartered in Pullman, Washington, SEL has manufactured products in the United States since 1984 and now serves customers worldwide. Our mission is simple: to make electric power safer, more reliable, and more economical.

3.      In my role as President of SEL, I am familiar with SEL's U.S. immigration program, which assists SEL employees with their employment-based immigration process related to work authorization and sponsorship for permanent residence in the U.S. I am also acutely aware of the challenges SEL faces on a daily basis in finding qualified candidates to fill its highly skilled openings. SEL currently has over fifty engineering positions open in the U.S.

4.      SEL does not hire foreign nationals in order to avoid paying market wages. SEL does not hire foreign nationals or U.S. citizens because of their citizenship. SEL hires people that are the best candidates for the position. SEL spends thousands of dollars on each engineer to train them to use our products and we need to be able to keep them in our work force.

5.      SEL employs over 5,300 employees world-wide including more than 200 individuals on H-1B visas.  As a U.S. electronics manufacturer and STEM employer, SEL goes to great lengths to recruit, hire, train and retain American workers. But the reality is, the demand for qualified engineers in the United States is far outpacing the number of American born graduates in our field. In order to sustain our growth, we are forced to seek highly skilled foreign nationals to fill this void. We always aim to hire the best and brightest regardless of national origin, and this has allowed SEL to innovate and grow into the #1 utility preferred relay supplier in the world.

SEL DECLARATION
(NO. 4:20-CV-7331-JSW)

McDermott Will & Emery LLP
ATTORNEYS AT LAW
MENLO PARK

6.      Foreign nationals play a vital role in our success, as shown by our patent statistics: Over the last five years, SEL has filed 269 patents:

> • 60% included foreign-born inventors;
>
> • 23% were with solely foreign-born inventors, which means 61 patents would not have happened without these foreign nationals; and
>
> • 35% of all the inventors on these applications are foreign-born.

**Impacts of the DOL Rule**

7.      I understand that the DOL Rule raises the minimum wages paid to H-1B workers to artificially high levels that vastly exceed what comparable domestic workers are paid. Unless enjoined, the DOL Rule will result in substantial irreparable harm to SEL.

8.      SEL has determined the near-term impact at SEL from the DOL Rule will be as follows: Implementing the new DOL Rule at SEL with regard to new H-1B transfers and H-1B amendments will require SEL to pay the new prevailing wage for these positions. The prevailing wages issued by the DOL are approximately 30% higher than current prevailing wages issued by the DOL. This will result in significant unfair differences in wages for like positions and experience where these foreign nationals are employed.  This is inconsistent with our practices and creates an unfair advantage.

9.      SEL has determined the long-term impact at SEL from the DOL Rule will be as follows: SEL anticipates filing well over 100 H-1B lottery/extension cases in 2021. Based on these filings and the DOL Rule, we currently calculate that the impact to SEL would exceed $3,000,000 in unscheduled foreign national salary increases.

10.     The following are examples of the impact of the DOL Rule on actual individuals employed at SEL.

Employee 1:

> •       A new applicant applied for an engineer position that would result in an H-1B transfer in Ohio.
>
> •       A few days before the DOL Rule was issued, SEL researched the DOL prevailing wage and it was $67,000.

McDermott Will & Emery LLP
Attorneys At Law
Menlo Park

McDermott Will & Emery LLP
Attorneys At Law
Menlo Park

- • A day after the DOL Rule took effect, SEL conducted the on-site interview and SEL was prepared to make an offer for $85,000, based on market wage information.

- • The new prevailing wage under the DOL Rule would be over $97,000, which is approximately 14% above market rate based on SEL's market wage information.

- • SEL has placed this offer on hold due to the significant wage change under the DOL Rule that is not supported by SEL's market wage information.

Employee 2:

- • A current employee on H-1B work authorization applied to a new role at SEL.

- • If the employee were to move to this role, SEL would have to amend the employee's H-1B work authorization. As a result, SEL would have to meet the new prevailing wage provided by the DOL Rule.

- • The new prevailing wage rate under the DOL Rule would require an approximately $33,000 increase to transfer this existing employee from an equivalent position with a different title to the new role, even though the position is within the same division, the same level of position within SEL, and the same location. It simply has a different focus area, which is enough to require the H-1B amendment and trigger the new DOL Rule wage rates. Again, this change in wage is not supported by SEL's market wage information.

Employee 3:

- • A new applicant applied for an engineer position that would result in an H-1B transfer in Texas.

- • This offer is presently on hold because the DOL Rule has raised the prevailing wage for this position by approximately $40,000.

11. In addition to the significant impacts I have described above, the DOL Rule significantly impacts SEL's hiring plans due to the significantly higher wages required. At this time, we have identified salaries that would need to increase (solely as a result of the DOL Rule) from $2,000

- 3 -

to $54,000, and over 100 employees would need to receive an increase of more than $10,000. Additional impacts include increases in retirement benefit contributions and engineering billing rates.

**Opportunity for Notice and Comment**

12.     Had SEL received formal notice and an opportunity to comment on the DOL Rule, SEL would have done so.  SEL would have told DOL that it has relied on the existing rules and that the changes to the rules would create an untenable labor situation.

13.     SEL will suffer substantial irreparable harm if the DOL Rule is not immediately enjoined. If preliminarily enjoined, SEL will be able to proceed with offers and transfers mentioned above. An injunction would thus prevent the substantial harm SEL faces.

McDermott Will & Emery LLP
Attorneys At Law
Menlo Park

- 4 -

SEL Declaration
(No. 4:20-cv-7331-JSW)

1

2      I declare under penalty of perjury that the foregoing is true and correct.

3  Dated: October 22, 2020

4      Pullman, Washington                    EDMUND O. SCHWEITZER, III
                                              PRESIDENT
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**SEL Declaration**
(No. 4:20-cv-7331-JSW)