# EXHIBIT 2

The record reasonably supports the decision of the FLRA. Since we find that the FLRA decision is not arbitrary, capricious, an abuse of discretion, or otherwise contrary to law, *Navy Public Works Ctr. v. FLRA,* 678 F.2d 97 (9th Cir.1982), we accept the FLRA construction as reasonable. *Dept. of the Treasury, IRS v. FLRA,* 494 U.S. 922, 110 S.Ct. 1623, 108 L.Ed.2d 914 (1990).

The INS' petition for relief is DENIED. The cross-application of the FLRA for enforcement is GRANTED.



Randy LEONARD, Grant Coffey, Tom Chamberlain, Richard Grace, Manuel Fagundes, Portland Fire Fighters Association, Local 43 I.A.F.F., Plaintiffs-Appellants,

v.

J.E. CLARK, Richard Bogle, Earl Blumenauer, Mike Lindberg, et al., Defendants-Appellees.

No. 91-35770.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 4, 1992.

Decided Dec. 27, 1993.

As Amended March 8, 1994.

Fire fighters' union and individual members sued city and city officials, seeking declaratory and injunctive relief from collective bargaining agreement clause that allegedly violated plaintiffs' First Amendment right to free speech. The United States District Court for the District of Oregon, Helen J. Frye, J., 758 F.Supp. 616, granted defendants' motion for summary judgment. Plaintiffs appealed. The Court of Appeals, Brunetti, Circuit Judge, held that: (1) individual fire fighters lacked standing to challenge provision, and (2) union's voluntary entrance into labor agreement waived its right to object to provision in question.

Affirmed.

1. Federal Courts ⟲776

Court of Appeals reviews district court's grant of summary judgment de novo.

2. Federal Courts ⟲766, 802

In reviewing district court's grant of summary judgment, Court of Appeals must determine, viewing evidence in light most favorable to nonmoving party, whether there are any genuine issues of material fact and whether district court correctly applied relevant substantive law.

3. Labor Relations ⟲257.1

Provision in parties' latest labor agreement stating that disputed provision (which was subject of instant case, in which employees contended that this provision violated their free speech rights) would remain in agreement but that city/employer could not use that fact in its defense of employees' lawsuit, did not preclude city from arguing that employees waived their First Amendment rights by entering into agreement; city was merely agreeing not to use fact that employees signed new agreement to argue that lawsuit should be dismissed as moot because employees had signed new, postcomplaint agreement containing disputed provision. U.S.C.A. Const.Amend. 1.

4. Federal Civil Procedure ⟲103.2

General rule applicable to federal court suits with multiple plaintiffs is that once court determines that one plaintiff has standing, it need not decide standing of others. U.S.C.A. Const. Art. 3, § 2, cl. 1.

5. Labor Relations ⟲249

Individual fire fighters' union members lacked standing to argue that disputed provision of labor agreement violated their free speech rights as individual fire fighters; provision by its plain terms applied only to union and not to its individual members and, even if individual members made showing that provision might chill their freedom of expression when they speak as union representatives, they made no showing that provision

inhibited their freedom to speak as individuals. U.S.C.A. Const. Art. 3, § 2, cl. 1; U.S.C.A. Const.Amend. 1.

**6. Federal Courts ⟲759**

In reviewing district court's decisions, Court of Appeals may affirm on any basis supported by record.

**7. Labor Relations ⟲257.1**

Fire fighter's union, by voluntarily entering into labor agreement with city, waived unrestricted exercise of any First Amendment rights infringed by provision of agreement stating that increased payroll costs resulting from state legislative action sponsored or endorsed by union would be charged against applicable salary agreements; waiver was knowing and intelligent, as union itself originally proposed agreement's language, that provision did not ban all union speech, and it was narrowly tailored to achieve city's goal of budgetary predictability. U.S.C.A. Const.Amend. 1.

---

Kathryn T. Whalen, Bennett & Durham, Portland, OR, for plaintiffs-appellants.

Marianna Kanwit, Deputy City Atty., Portland, OR, for defendants-appellees.

Appeal from the United States District Court for the District of Oregon.

Before: TANG, BRUNETTI, and FERNANDEZ, Circuit Judges.

BRUNETTI, Circuit Judge:

Appellants, the Portland Fire Fighters Association (the "Union") and several of its individual members (the "individual plaintiffs"), brought a 42 U.S.C. § 1983 action against appellees, the City of Portland and several of its officials (collectively, the "City"). The Union and the individual plaintiffs sought to have the district court declare a provision of its collective bargaining agreement with the City a violation of the First Amendment and enjoin its enforcement. On cross-motions for summary judgment, the district court first dismissed the individual plaintiffs from the action and then granted the City's motion, 758 F.Supp. 616. We affirm.

**I**

The Union is the exclusive bargaining representative for various classifications of fire fighters employed by the City. The individual plaintiffs are fire fighters employed by the City; they are also members of the Union's bargaining unit. Four of the individual plaintiffs also serve in official capacities for the Union: Randy Leonard as president, Tom Chamberlain as Secretary-Treasurer, Grant Coffey as a member of the Executive Board, and Richard Grace as a member of the negotiating team.

The current labor agreement between the Union and the City contains the following provision, which is the subject of the instant dispute:

> Article V—Credit for Legislated Benefits
>
> During the life of the agreement, legislative issues specifically endorsed or sponsored by the Portland Fire Fighters Association that result in action by the state legislature and which result in any new economic or benefit improvement causing increased payroll costs to the City beyond those stipulated at the time of mutual contract ratification, such costs shall be charged against applicable salary agreement whenever the changes become effective.

The language of this provision was originally proposed by the Union in 1981 and has been included in every labor agreement concluded since then. The City has never invoked Article V.

Leonard was elected president of the Union in 1986. Since then, the Union and the City have concluded three successive labor agreements, in 1986, 1989, and 1990. During the negotiations leading to these agreements, the Union consistently opposed Article V as an unconstitutional restriction on its First Amendment right to petition the government. Nevertheless, when the dust from the bargaining settled, the labor agreements continued to include Article V.

Leonard, the other individual plaintiffs, and the Union filed this lawsuit in 1990 to

challenge the constitutionality of Article V. Both sides moved for summary judgment. The district court first held that because Article V on its face applied only to the Union, the individual plaintiffs could not demonstrate the existence of a case or controversy and therefore could not invoke the court's jurisdiction. The district court then denied the Union's motion for summary judgment and granted the City's, on the ground that the Union had waived the unrestricted exercise of any First Amendment rights arguably at stake by voluntarily entering into the labor agreement with the City. The Union moved for reconsideration but the trial court affirmed its prior ruling and denied the motion. The Union and the individual plaintiffs appeal.

## II

[1, 2] We review a district court's grant of summary judgment *de novo*. *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 629 (9th Cir.1987). We must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *Tzung v. State Farm Fire and Casualty Co.*, 873 F.2d 1338, 1339–1340 (9th Cir. 1989).

[3] There is only one disputed issue of fact in this case. The City's primary argument, and the basis for the decision of the district court, is that the Union waived the full and unrestricted exercise of what it contends are its First Amendment rights by entering into the labor agreement containing Article V. However, the Union contends that the latest labor agreement between the parties prohibits the City from raising this argument. The terms of this agreement, which runs from July 1, 1990 through June 30, 1994, were embodied in a Memorandum of Agreement dated February 7, 1991. This Memorandum of Agreement contains the following provision at paragraph 12:

The parties agree that Article V, Credit for Legislative Benefits, shall remain in the Labor Agreement in its present form without change. The parties further agree that if the Association continues to pursue its lawsuit challenging the constitutionality of Article V in Federal Court, *the fact that the Association has agreed that Article V will remain in the contract will not be used by the City in its defense of the lawsuit.*

(Emphasis added). The Union argues that the highlighted language estops the City from raising the waiver defense. The district court disagreed, and found that the City was precluded only from arguing that the presence of Article V in the latest agreement was *additional* evidence that the Union waived any First Amendment rights affected by Article V.

We agree with the district court. To explain the meaning of paragraph 12, the City presented the affidavit of David Shaff,[1] its employee relations officer. Shaff, the City's chief spokesperson in its negotiations with the Union, stated:

Paragraph 12 ... was responsive to the concern of the Association that the "act" of the retention of the Article V language in the new Agreement could or would be used by the City in the litigation to argue that the [plaintiffs] had somehow given up on their claims. It was agreed by the participants to those discussions ... that the City would not make this argument and that paragraph 12 should reflect this. Furthermore, it was understood by all participants that *paragraph 12 preserved the status quo of the litigation and nothing more.*

At no time during the course of the negotiations or in ... other discussions involving the topic of the litigation in general was there mention or discussion by either side that the City was relinquishing its assertion that [plaintiffs] had waived their First Amendment rights through the bargaining process.

(Emphasis added). According to Shaff, then, the City merely agreed not to use the fact

---

1. Although Shaff's name is spelled "Schaff" in the captions, it is spelled "Shaff" throughout the City's brief and in his deposition testimony, so we use the latter spelling in this opinion.

that the Union signed the new agreement to argue that the lawsuit should be dismissed as moot because the Union had signed a new, post-complaint agreement containing Article V. The City has not made this argument. The City is merely repeating its argument, made prior to the most recent agreement and thus part of the "status quo" of the litigation, that the Union waived its claimed First Amendment rights by signing agreements containing Article V.

Because the City has presented this evidence, the Union, to avoid an adverse grant of summary judgment, must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (quotations omitted). On appeal, the Union cites no evidence to counter Shaff's statements.[2]

For the grant of summary judgment to be reversed on the basis of the Union's paragraph 12 argument, this Court must find the existence of a "genuine" issue as to whether the City may raise the waiver defense. More specifically, the evidence must be such that a reasonable jury could return a verdict for the Union on this issue. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The plain language of paragraph 12 seems rather clear to us, and Shaff's affidavit states that the City never agreed not to raise the waiver defense. In fact, it would be surprising if the City had waived a major defense to the action against it in such an obtuse and backhanded manner. Therefore, we find that no reasonable jury could agree with the Union on this issue, and so we affirm the district court's decision.

### III

[4, 5] We next address the district court's dismissal of the individual plaintiffs on the ground that they do not have standing to challenge Article V.[3] The general rule applicable to federal court suits with multiple plaintiffs is that once the court determines that one of the plaintiffs has standing, it need not decide the standing of the others. *Carey v. Population Services Int'l*, 431 U.S. 678, 682, 97 S.Ct. 2010, 2014, 52 L.Ed.2d 675 (1977). Ordinarily, then, the district court's determination that the Union had standing would end the inquiry. However, because we hold *infra* that the Union waived the unrestricted exercise of any First Amendment rights which may have been at stake by signing the labor agreement, we must reach the issue of whether the individual plaintiffs have standing to challenge Article V. We agree with the district court that they do not.

To have Article III standing, a plaintiff must show "at an irreducible minimum" (1) "that he *personally* has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant"; (2) that the injury "fairly can be traced to the challenged action"; and (3) that the injury "is likely to be redressed by a favorable decision." *Valley Forge Christian College v. Americans United*, 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982) (quotations omitted) (emphasis added). The Union argues that Article V impinges upon the free speech rights of individual fire fighters, and that therefore they have suffered the necessary "personal" injury.

We disagree. Article V by its plain language applies only to the Union and not to its individual members. The individual plaintiffs have not shown that Article V in any way inhibits their freedom to speak as *individuals*. Shaff's deposition testimony indi-

---

2. The affidavit of attorney Kathryn Whalen, submitted to the district court, is no clearer than the language of paragraph 12 itself.

3. In its motion for summary judgment below, the City argued that the Union did not have standing either because it had suffered no injury and was seeking an advisory opinion. The district court rejected this argument and held that the Union did have standing. The City does not contest the Union's standing on appeal.

cates that Article V will be triggered only if the plaintiffs speak on behalf of the Union. Plaintiffs are free to endorse legislation as long as they do not (1) have authority to represent the Union, *and* (2) claim that they are speaking for it. Meanwhile, the Union can only "specifically endorse[ ] or sponsor[ ] legislative issues" through its authorized agents. Thus, the only chill implicating the First Amendment here is on the speech of these agents when they act under authority from their principal, the Union. *Cf.* Restatement (Second) of Agency §§ 26–27, 33 (1958) (creation and scope of authority). It is the Union which can colorably assert a threatened injury to its authority, and we address the Union's claim on the merits, *infra.*

The individual plaintiffs' speech could be affected only if, as individual union members, they wished to claim authority to speak for the Union when they did not possess it. However, such a "chill" does not implicate First Amendment rights at all: "[T]here is no constitutional value in false statements of fact." *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 340, 94 S.Ct. 2997, 3007, 41 L.Ed.2d 789 (1974). The individual plaintiffs have not alleged the *personal* actual or threatened injury necessary to gain standing in federal court.[4] We thus affirm their dismissal from the action.

## IV

We finally reach the main issue on appeal: whether, to the extent that Article V may infringe upon the Union's First Amendment rights, the Union has waived the full and unrestricted exercise of those rights. We expressly decline to reach the underlying question of whether Article V actually implicates the Union's First Amendment rights at all, as the basis for the Union's appeal is the waiver issue. The district court made no determination as to whether Article V violated rights guaranteed to the Fire Fighters Association under the United States Constitution, finding that even if it were to conclude that such rights were violated, the Union voluntarily "restricted or agreed to waive the full exercise of those constitutional rights" by entering into its labor agreement with the City. The parties did not explicitly brief to this court the more fundamental First Amendment matter of defining the rights, if any, at stake, and defined the issue on appeal as whether the Union had waived its First Amendment rights. Without a determination by the district court that Article V in fact violates the Union's First Amendment rights, but faced with its conclusion that if Article V violated those rights the Union has waived those constitutional rights, we will review the record to decide whether the district court erred in its finding of waiver.

### A.

[6, 7] In reviewing the decisions of the district court, we may affirm on any basis supported by the record. *United States v. Washington,* 969 F.2d 752, 755 (9th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1945, 123 L.Ed.2d 651 (1993). A review of the record indicates that the Union did waive any such rights to the extent of Article V. Furthermore, the public policy considerations in favor of enforcing this waiver outweigh those against doing so, and we thus affirm the district court's grant of the City's summary judgment motion.

Article V is a provision in a negotiated collective bargaining agreement. The City contends that the Union waived the full and unrestricted exercise of its First Amendment rights by entering into this agreement. The Supreme Court has held that First Amendment rights may be waived upon clear and convincing evidence that the waiver is knowing, voluntary and intelligent. *D.H. Overmyer Co. v. Frick Co.,* 405 U.S. 174, 185, 187, 92 S.Ct. 775, 782, 783, 31 L.Ed.2d 124 (1972).

---

4. The other potential "injury" that Article V arguably inflicts on the individual plaintiffs is the salary reduction the City would impose to compensate for the increased benefits resulting from any successful Union lobbying. However, the individual plaintiffs have not made this argument. It is also debatable whether such a salary reduction would constitute an "injury," considering that any reduction would be offset by increased benefits, leaving total compensation the same.

We adopted this standard in *Davies v. Grossmont Union High Sch. Dist.*, 930 F.2d 1390, 1394 (9th Cir.), *cert. denied,* — U.S. —, 111 S.Ct. 2892, 115 L.Ed.2d 1057 (1991).[5]

These conditions are satisfied in this case. First, the waiver was knowing and intelligent. The Union was advised by competent counsel during the negotiations and it explicitly objected to Article V. *See Davies,* 930 F.2d at 1395 (waiver was "knowing" in part because appellant was represented by counsel during settlement negotiations). The Union itself originally proposed the language of the agreement; it is disingenuous for it now to claim that it did not know what it was proposing.

Second, the Union voluntarily signed the labor agreement. The fact that the Union informed the City of its view that Article V was "unconstitutional, illegal, and unenforceable" does not make the Union's execution of the agreement any less voluntary. If the Union felt that First Amendment rights were burdened by Article V, it should not have bargained them away and signed the agreement. Article V is not a condition imposed by City ordinance; it is a contractual term that resulted from the give-and-take of negotiations between parties of relatively equal bargaining strength.[6] Because the Union's waiver was knowing, voluntary, and intelligent, we affirm the district court's finding of waiver.

### B.

We held in *Davies* that even if a party is found to have validly waived a constitutional right, we will not enforce the waiver " 'if the interest in its enforcement is outweighed in the circumstances by a public policy harmed by enforcement of the agreement.' " 930 F.2d at 1396 (quoting *Town of Newton v. Rumery,* 480 U.S. 386, 392, 107 S.Ct. 1187, 1191, 94 L.Ed.2d 405 (1987)).[7] In *Davies,* we considered the enforceability of a settlement agreement between Dr. and Mrs. Davies on the one hand, and the Grossmont Union High School District on the other, whereby the Davieses agreed to dismiss their federal and state law actions against the District in return for a payment of $39,200. The agreement also provided that "neither one nor both of [the Davieses] will ever seek, apply for, or accept future employment, position, or office with Defendant District in any capacity." *Id.* at 1392. Dr. Davies later sought and won election to the Governing Board of the District, and the District sued to enforce the settlement agreement. *Id.* at 1392–1393.

We held that, by signing the agreement, Dr. Davies had knowingly, voluntarily, and intelligently waived his constitutional right to run for office. *Id.* at 1395. We then held, however, that the public policy favoring non-enforcement of the waiver was "of the highest order ...: the right of the people to elect representatives of their own choosing to public office." *Id.* at 1397. We found the only legitimate public policy favoring enforcement of the waiver to be that favoring the private settlement of disputes, and held that this interest was outweighed by the public interest in allowing the people to vote for representatives of their own choosing. *Id.* at 1399. We also found that the absence of a close nexus between the right waived (running for

---

5. The district court reviewed the City's waiver claim under the standard for contractual waivers of constitutional rights set forth by the Third Circuit in *Erie Telecommunications, Inc. v. City of Erie,* 853 F.2d 1084, 1096 (3d Cir.1988). However, in *Davies* we reaffirmed the Supreme Court's *D.H. Overmyer* standard, and we see no reason to use the *Erie Telecommunications* standard in this case.

6. As the Supreme Court noted in discussing the *D.H. Overmyer* contractual waiver in a subsequent opinion:

    The contract ... was negotiated between two corporations; the waiver provision was specifically bargained for and drafted by their lawyers in the process of these negotiations. As the Court noted, it was not a case of unequal bargaining power or overreaching. The Overmyer–Frick agreement, from the start, was not a contract of adhesion. Both parties were aware of the significance of the waiver provision.

    *Fuentes v. Shevin,* 407 U.S. 67, 95, 92 S.Ct. 1983, 2001, 32 L.Ed.2d 556 (1972) (quotations omitted).

7. Because we decided *Davies* in April 1991, the district court did not discuss it in its opinion, which was filed on February 27, 1991. However, the Union has challenged the enforceability of the waiver on appeal, so we will consider the merits of the issue.

office) and the dispute resolved by the settlement agreement showed that the government was probably "seeking the waiver of important rights without a legitimate governmental interest that justifies doing so." *Id.*

*Davies* thus requires us to balance the public policies favoring enforcement of the Union's waiver against those favoring non-enforcement.[8] We discern two public policies favoring enforcement. The first is the public interest in the stability and finality of collective bargaining agreements. This interest is stronger than that in enforcing ordinary private settlements, because a collective bargaining agreement "is a charter for the 'system of industrial self-government' envisioned by federal labor law." *Mullins v. Kaiser Steel Corp.*, 642 F.2d 1302, 1319 (D.C.Cir. 1980), *rev'd on other grounds*, 455 U.S. 72, 102 S.Ct. 851, 70 L.Ed.2d 833 (1982) (quoting *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 580, 80 S.Ct. 1347, 1351, 4 L.Ed.2d 1409 (1960)). Consequently, "[t]o avert industrial strife, collective bargaining agreements must be more secure than garden variety contracts." *Merk v. Jewel Food Stores*, 945 F.2d 889, 894 (7th Cir.1991), *cert. denied*, ––– U.S. –––, 112 S.Ct. 1951, 118 L.Ed.2d 555 (1992). Enforcing the Union's waiver would serve the public interest in the stability of collective bargaining agreements.

The second public policy supporting enforcement of the waiver is the public interest in the finality of a compensation package between a city and a group of its employees. Municipal budgets are calculated based on the stability of such arrangements, and the public has a strong interest in avoiding the consequences—tax hikes or budget deficits—of mid-course compensation increases.[9]

The public policy favoring non-enforcement of the waiver is the public interest in the Union's unfettered ability to present its views to the state legislature. As the Union notes, the "right to fully petition the government and to speak on matters of public concern has long been recognized to be a fundamental right of critical importance." Were Article V a complete ban on all Union political speech, we might well hold that the public interest in allowing and hearing such speech outweighs the public interests in enforcing the waiver.

However, Article V does not ban *all* Union speech; it only penalizes (a) endorsements of (b) payroll-increasing legislation (c) enacted by the state legislature. Article V is thus narrowly tailored to achieve the City's goal of budgetary predictability.[10] The Union remains free to endorse legislation on a variety of topics that do not trigger Article V, such as pension reform, working conditions, fire

---

8. *Davies* noted that when considering the waiver of a *constitutional* right, a stricter test than simple *Rumery* balancing might be appropriate, because *Rumery* involved the surrender of only a *statutory* remedy. *Davies*, 930 F.2d at 1397. We decline to adopt a stricter standard, particularly given that at least one other circuit has held that *Rumery* does not even require such a balancing process in the first place. In *Erie Telecommunications, Inc.*, 853 F.2d at 1099, the Third Circuit stated that

> public policy must be considered as a factor in determining whether to give effect to a waiver of constitutional rights. However, we are of the opinion that the "knowing, voluntary and intelligent" standard established by the Supreme Court for the waiver of constitutional rights, subsumes consideration of the public's interests.

9. The City argues that a third public policy supports enforcement of the waiver: "government is not required to subsidize private lobbying efforts," and Article V "simply restricts *public subsidy* for plaintiffs' lobbying efforts." However, there is no public policy *against* the influence on government of private lobbying; the Supreme Court has stated only that the government is not *required* by the First Amendment to subsidize such lobbying. *See, e.g., Regan v. Taxation with Representation*, 461 U.S. 540, 546, 103 S.Ct. 1997, 2001, 76 L.Ed.2d 129 (1983).

10. Article V ensures that the total compensation paid to the Union's members pursuant to the collective bargaining agreement stays the same, and thus, as the City argued below, "ensures certainty as to the monetary aspects of the Contract between the City and the Association." The mix between wages and benefits, or among different benefits, may change, but the total amount remains constant. Thus, our concern in *Davies*, that the lack of a close nexus between the promise not to run for office and the dispute resolved in the settlement agreement might indicate the absence of a legitimate governmental interest, is not present here.

safety codes, and others.[11] Furthermore, even in areas that would cause some offset, the effect would be for the term of the existing agreement only. That is because the overall compensation package would only remain the same for that term. Given the history of the relationship between the parties and given the continuing need for firefighters, we can properly infer that the union is a long-term repeat player. Benefits lobbied for are not truly eliminated, they are merely deferred. The union has an incentive to lobby for them if they will be beneficial to the membership in the long run. Thus, Article V does not "significantly impinge" upon the Union's lobbying activities. *See Rust*, 500 U.S. 173, ——, 111 S.Ct. 1759, 1776, 114 L.Ed.2d 233 (1991). Even in those areas affected by Article V, the Union can endorse benefit-increasing legislation if it feels that the benefits to be gained by passage of the bill are more valuable than the salary foregone.

Because Article V is a relatively narrow limitation on the Union's political speech, we cannot find that the public policy in favor of the Union's completely unfettered freedom of expression outweighs the public interests in the finality of collective bargaining agreements and the predictability of municipal budgets.[12] We affirm the district court's grant of the City's summary judgment motion and also affirm the district court's denial of the Union's summary judgment motion.

AFFIRMED.



---

11. In deposition testimony, two Union officers gave examples of how they had endorsed pension reform legislation.

12. The fact that the Union asserts a constitutionally-based public policy argument against the City's statutory- and efficiency-based ones cannot by itself resolve the debate in the Union's favor. If constitutional arguments always outweighed ones grounded in other sources of law, then we could never enforce individuals' waivers of their constitutional rights, an outcome that would fly in the face of a long line of Supreme Court precedent holding that such waivers are permissible under certain circumstances. *See, e.g., D.H. Overmyer*, 405 U.S. at 184–86, 92 S.Ct. at 781–83 (due process rights); *Faretta v. California*, 422 U.S. 806, 835, 95 S.Ct. 2525, 2541, 45 L.Ed.2d 562 (1975) (right to counsel); *Curtis Publishing Co. v. Butts*, 388 U.S. 130, 145, 87 S.Ct. 1975, 1986, 18 L.Ed.2d 1094 (1967) (First Amendment rights).

---

J.R. MAFFEI; Richard Maffei; Betty J. Maffei, Plaintiffs–Appellants,

v.

NORTHERN INSURANCE COMPANY OF NEW YORK; Maryland Casualty Co., Defendants–Appellees.

No. 92-15651.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 7, 1993.

Decided Dec. 27, 1993.

Insured sued its insurers for breach of contract, bad faith, and declaratory relief, arising from insurer's refusal to defend insured in lawsuits alleging injury from exposure to sulphur dioxide smoke emitted from drum of sodium hydrosulphite stored adjacent to insured's warehouse. Insured alleged that "hostile fire" had occurred within meaning of its comprehensive general liability and umbrella policies, which covered such fires, but excluded other pollution claims. The United States District Court for the Northern District of California, Charles A. Legge, J., granted insurers' motion for summary judgment. Insured appealed. The Court of Appeals, Hug, Circuit Judge, held that: (1) court improperly excluded insured's expert's declaration that "fire" had occurred, and (2) genuine issue of material fact existed as to whether fire did occur.

Reversed and remanded.

Farris, Circuit Judge, issued dissenting opinion.